**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTIN JAMES KIPP,<br>*Petitioner-Appellant,*<br><br>v.<br><br>RONALD DAVIS, Warden, California<br>State Prison at San Quentin,<br>*Respondent-Appellee.* | No. 16-99004<br><br>D.C. No.<br>2:99-cv-04973-<br>AB<br><br><br>ORDER |

Filed February 8, 2021

Before: Richard A. Paez, Mary H. Murguia, and
Jacqueline H. Nguyen, Circuit Judges.

Order;
Concurrence by Judge Paez;
Concurrence by Judge Miller;
Dissent by Judge Ikuta;
Dissent by Judge VanDyke;
Statement by Judge O'Scannlain

## SUMMARY[*]

### Habeas Corpus / Death Penalty

The panel filed an order denying rehearing en banc in a case in which a judge of this court sua sponte requested a vote on whether to hear the case en banc.

Concurring in the denial of rehearing en banc, Judge Paez, joined by Judge Murguia, responded to Judge Ikuta's dissent which, he wrote, leaves the impression that the panel majority was determined to reverse the district court's denial of habeas relief, irrespective of the limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). He wrote that, as the California Attorney General agrees, the case does not meet the standards for rehearing en banc in Fed. R. App. P. 35(a).

Concurring in the denial of rehearing en banc, Judge Miller, joined by Judges Graber, McKeown, Wardlaw, W. Fletcher, Gould, Christen, and Hurwitz, wrote to note his disagreement with the statement in Judge Ikuta's dissent that "[in] refusing to vacate and rehear this case en banc, we are implicitly endorsing an approach which circumvents the Supreme Court's case law."

Dissenting from the denial of rehearing en banc, Judge Ikuta, joined by Judges Callahan, M. Smith, Nguyen, Owens, Bennett, R. Nelson, Bade, Collins, Lee, Bress, Hunsaker, Bumatay, and VanDyke, wrote that the panel

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

majority could not find a way to hold that the California Supreme Court's decision was an unreasonable application of Supreme Court precedent, so it transmuted the state court's legal decision into a factual one, and then purported to hold that the state court made an unreasonable determination of facts. She wrote that in refusing to vacate and rehear the case en banc, the court is implicitly endorsing an approach which circumvents the Supreme Court's case law requiring strict adherence to the limitations in 28 U.S.C. § 2254(d).

Dissenting from the denial of rehearing en banc, Judge VanDyke, joined by Judges Ikuta, Callahan, R. Nelson, and Bumatay, wrote to note his disagreement with Judge Miller's concurrence. He wrote that this court needs to own its systemic failure applying AEDPA.

Respecting the denial of rehearing en banc, Judge O'Scannlain wrote that he agrees with the views expressed by Judge Ikuta in her dissent.

## COUNSEL

Cuauhtemoc Ortega, Federal Public Defender; Celeste Bacchi and Mark R. Drozdowski, Deputy Federal Public Defenders; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Xavier Becerra, Attorney General; Lance E. Winters, Chief Assistant Attorney General; James William Bilderback II, Senior Assistant Attorney General; Holly D. Wilkens, Supervising Deputy Attorney General; Randall D. Einhorn, Deputy Attorney General; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

## ORDER

A judge of this court sua sponte requested a vote on whether to rehear this case en banc. The matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc consideration. Fed. R. App. P. 35. Rehearing en banc is **DENIED**.

Attached are Judge Paez's and Judge Miller's concurrences to and Judge Ikuta's and Judge VanDyke's dissents from the denial of rehearing en banc, and Judge O'Scannlain's separate statement.

---

PAEZ, Circuit Judge, concurring in the denial of rehearing en banc, joined by MURGUIA, Circuit Judge.

As an appellate court, we decide cases in three-judge panels. Rehearing a case en banc is the exception, limited to those cases that meet the standards for rehearing en banc under Federal Rule of Appellate Procedure 35(a).[1] Despite

---

[1] Federal Rule of Appellate Procedure 35(a) states:

> A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless:
>
> > (1) En banc consideration is necessary to secure or maintain uniformity of the court's decisions; or

Judge Ikuta's protestations to the contrary, this case does not meet those exacting standards. We are not alone in that assessment: the California Attorney General, the state's chief law enforcement officer, agrees.[2]

Judge Ikuta's dissent is a misguided attack on the majority's opinion. It leaves the impression that the panel majority was determined to reverse the district court's denial of habeas relief, irrespective of the limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), on the scope of our habeas review. Nothing could be further from the truth. We

---

> (2) The proceeding involves a question of exceptional importance.

Fed. R. App. P. 35(a).

[2] Although expressing the view that the State would defend the state court judgment if en banc review were granted, the California Attorney General stated in supplemental briefing that:

> This case does not fall squarely within the traditional indicia for a grant of en banc review. Specifically, the Court's opinion is not in conflict with other precedent of this Circuit, or precedent of another circuit. The case also does not involve a question of law that is of exceptional importance. Rather, the case involves the application of settled legal standards to a set of facts.
>
> And while this case . . . is certainly of great importance to the parties and the victim's family, the same panel that reversed the judgment in this case affirmed the denial of relief as to Kipp's death judgment arising from his Los Angeles County case. All of these considerations informed the State's decision not to seek en banc review.

Davis Suppl. Br. 6, ECF No. 82.

are confident in our opinion's analysis, but in light of Judge Ikuta's serious charges, we respond briefly here to her dissent.

**1.** *Contextual background.* Martin James Kipp was charged with two different capital homicides in two different counties. The first murder, of Tiffany Frizzell, occurred in Los Angeles County on September 17, 1983. The second murder, of Antaya Yvette Howard, occurred in Orange County on December 30, 1983. The second homicide is the one that gives rise to this case. At the time of trial for the Howard murder, the case at issue here, Kipp had been charged—but not yet tried—in the first murder, that of Frizzell. The two homicides were prosecuted separately.[3] At trial for the Howard murder, the court admitted evidence that Kipp had raped and murdered Frizzell three months before Howard's murder, as other-act evidence tending to show identity and intent. *Kipp v. Davis*, 971 F.3d 939, 943–46 (9th Cir. 2020).

In his direct appeal to the California Supreme Court, Kipp argued that the trial court's admission of evidence of Frizzell's rape and murder violated state evidence rules and his federal due process rights. The California Supreme Court rejected Kipp's claims and affirmed his conviction and sentence. *People v. Kipp*, 956 P.2d 1169, 1181–83 (Cal. 1998).

---

[3] Kipp was subsequently tried, convicted, and sentenced to death in 1989 in Los Angeles County Superior Court for the rape, robbery, and murder of Frizzell. The California Supreme Court affirmed the judgment on direct appeal. *People v. Kipp*, 33 P.3d 450, 458 (2001). Kipp's federal habeas petition was denied, and that denial was affirmed by the same panel, on the same day that we filed the opinion in this case. *See Kipp v. Davis*, 971 F.3d 866 (9th Cir. 2020).

We reversed the district court's denial of Kipp's 28 U.S.C. § 2254 habeas corpus petition challenging his conviction and death sentence for the murder and attempted rape of Howard. *Kipp*, 971 F.3d at 960. AEDPA governed our review of Kipp's habeas claims. Under AEDPA, if a claim was "adjudicated on the merits in [s]tate court proceedings," a federal court may grant habeas relief if the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). We concluded that the state court made an unreasonable determination of the facts regarding the similarity of the other-act evidence and that admission of that evidence violated Kipp's due process right to a fair trial. *Kipp*, 971 F.3d at 955, 958.

To the extent Judge Ikuta complains that we disapproved of the state court's legal conclusion, as opposed to its fact-finding process, we disagree. As we explained in the majority opinion, the California Supreme Court *unreasonably* determined that the facts of the Frizzell murder were as similar to the Howard murder as to be like signature crimes, rendering the facts admissible to support an inference of connection by common identity or intent. *Id.* at 952–55.

**2.** *Judge Ikuta's dissent.* The dissent accuses the majority of stepping into the shoes of the California Supreme Court and substituting our own judgment for that of the state court instead of applying AEDPA's deferential review. We are accused of making the same mistake that the Supreme Court corrected in *Shinn v. Kayer*, 141 S. Ct. 517 (2020) and using § 2254(d)(2) to substitute our judgment for that of the California Supreme Court. That is not what we did. *Kayer* and this case are not the same. An honest read of the

majority opinion is enough to see that Judge Ikuta's argument misses the mark.

The critical issue that we addressed in this case was whether the state supreme court made an unreasonable determination of the facts. In disagreeing with the majority opinion, Judge Ikuta fundamentally mischaracterizes our analysis, asserting that we re-weighed the evidence. This distortion of the majority opinion ignores our holding in *Taylor v. Maddox* that a "[f]ailure to consider key aspects of the record is a defect in the fact-finding process." 366 F.3d 992, 1008 (9th Cir. 2004).

While a federal court may not second-guess a state court's fact-finding process if it determines that the state court was merely wrong, *Taylor* explains that habeas relief may be warranted in those rare cases where the state court's fact-finding process was actually unreasonable. *See id.* at 999. An unreasonable determination of facts exists where, among other circumstances, the state court made its determinations according to a flawed process—for example, under an incorrect legal standard, where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See id.* at 999–1001.[4] It is well-settled that

---

[4] *See also Brumfield v. Cain*, 576 U.S. 305, 316–322 (2015) (attributing in part the state court's erroneous failure to hold an evidentiary hearing to the fact that the court overlooked evidence in the record); *Burton v. Davis*, 816 F.3d 1132, 1155–59 (9th Cir. 2016) (finding the state court's factual determination regarding a defendant's intent in asking to represent himself was not entitled to a presumption of correctness because the court disregarded relevant evidence); *Maxwell v. Roe*, 628 F.3d 486, 504–06 (9th Cir. 2010) (finding the state court's conclusion that a jailhouse informant testified truthfully at the defendant's trial was an unreasonable determination of facts because the

when a state court overlooks highly probative evidence central to a petitioner's claim, its fact-finding process is fatally undermined and the resulting factual determination is unreasonable under § 2254(d)(2). *Id.* at 1001.

In the majority opinion, we concluded that the state court made its determination according to a flawed fact-finding process. Contrary to Judge Ikuta's characterization, the evidence of the dissimilarities between the Frizzell and Howard homicides that was before the state court was not made merely in "passing reference," and did not relieve the "busy state court[]" of its obligation to discuss Kipp's claims. *Cf. Johnson v. Williams*, 568 U.S. 289, 298–301 (2013). Nor did the state court "expressly acknowledge[]" the facts in the record. *See Taylor*, 366 F.3d at 1005. The sum total of the state court's consideration of dissimilarities between the Howard and Frizzell crimes was: "the defense argued that the evidence had little or no relevance on the issues of identity and intent because the two killings were more dissimilar than similar." *Kipp*, 956 P.2d at 1181.

This single, cursory statement summarizing the general thrust of Kipp's argument fails to demonstrate that the California Supreme Court "expressly acknowledged" the evidence of the dissimilarities in the record. The law respects substance over form. While a state court need not address "every jot and tittle of proof suggested to them," it must not ignore evidence that is "highly probative and central to petitioner's claim." *Taylor*, 366 F.3d at 1001.

---

state court failed to consider evidence of the informant's pattern of perjury); *Green v. LaMarque*, 532 F.3d 1028, 1033 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court).

We recognized that AEDPA applied to Kipp's due process claim and we carefully adhered to the § 2254(d) standard in our analysis. By failing to consider relevant evidence that was properly presented to it when making its determination, the California Supreme Court's determination of facts relating to admission of the Frizzell other-acts evidence was unreasonable and AEDPA deference was not due under § 2254(d)(2). *See id.* at 999. A fair reading of our opinion shows that we applied the correct analytical framework under § 2254(d)(2). *See Kipp*, 971 F.3d at 948–59. The predicate factual determinations that the California Supreme Court made were unreasonable in light of all the evidence. As we explained, the error in the resulting legal conclusion rose to the level of a due process violation. *Id.* at 955–58. With the admission of the Frizzell evidence, Kipp was effectively on trial for two crimes.

**3.** *En banc standards.* We cannot lose sight of the standards for what constitutes an appropriate case for rehearing en banc. This case is not one of them—it involves the application of settled legal standards to a set of facts. As recognized by the California Attorney General, who expressly declined to argue for rehearing even after we invited it to do so, this case does not present a "question of exceptional importance" meriting en banc consideration. Fed. R. App. P. 35(a)(2). The majority opinion is not in conflict with other precedent of this Circuit, or the precedent of another. As succinctly stated by Judge Miller in his concurrence, with which we agree, there is "no reason for us to be more solicitous of the State's interests than the State itself."

We are reminded that deference on federal habeas "does not imply abandonment or abdication of judicial review," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). By

distorting our opinion to argue that this case should be reheard en banc, the dissent glosses over the admonition in Federal Rule of Appellate Procedure Rule 35(a) that "an en banc hearing or rehearing is not favored and ordinarily will not be ordered unless" the standards are met. Here, despite Judge Ikuta's disagreement with our opinion, the standards under Rule 35(a) were not met.

For these reasons, and for the reasons explained in the majority opinion, we concur in the court's decision to deny rehearing this case en banc.

MILLER, Circuit Judge, with whom GRABER, McKEOWN, WARDLAW, W. FLETCHER, GOULD, CHRISTEN, and HURWITZ, Circuit Judges, join, concurring in the denial of rehearing en banc:

I write to note my respectful disagreement with the statement in Judge Ikuta's dissenting opinion that "[i]n refusing to vacate and rehear this case en banc, we are implicitly endorsing an approach which circumvents the Supreme Court's case law." Ikuta Dissent at 14. Our decision not to rehear this case en banc endorses only the proposition that the case does not meet the criteria for rehearing en banc set out in Federal Rule of Appellate Procedure 35. That rule reserves rehearing en banc for those unusual cases in which rehearing is required "to secure or maintain uniformity of the court's decisions" or to resolve "a question of exceptional importance." Fed. R. App. P. 35(a). A determination that a panel's decision is wrong is not, by itself, a sufficient reason to grant rehearing en banc. Conversely, the denial of rehearing en banc does not mean that a majority of the court has decided that the panel's decision is correct.

No one disputes that the panel correctly stated the rules of deference prescribed in 28 U.S.C. § 2254(d). The only question is whether the panel erred in applying those rules to the decision of the California Supreme Court affirming Martin Kipp's conviction. Although Judge Ikuta and Judge Nguyen have persuasively argued that it did, that case-specific error does not affect the "uniformity of the court's decisions."

As for "exceptional importance," this case is undoubtedly of great importance to Kipp and to the family of his victim, Antaya Howard. But it is the State of California whose judgment of conviction has been set aside, and the State not only chose not to file a petition for rehearing en banc, it expressly declined to argue for rehearing even after we invited it to do so. Perhaps the California Attorney General had good reasons for that choice, or perhaps not, but either way, the choice was his to make on behalf of the State. I see no reason for us to be more solicitous of the State's interests than the State itself.

---

IKUTA, Circuit Judge, with whom CALLAHAN, M. SMITH, NGUYEN, OWENS, BENNETT, R. NELSON, BADE, COLLINS, LEE, BRESS, HUNSAKER, BUMATAY, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Will the Ninth Circuit ever learn from its past mistakes? The Supreme Court has repeatedly overruled our habeas decisions that reweigh evidence under a "de-novo-masquerading-as-deference approach." *See Shinn v. Kayer*,

141 S. Ct. 517, 522 (2020) (per curiam) (citation omitted).[1] And the Supreme Court has repeatedly directed us to give proper deference to state courts' decisions under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). *See, e.g.*, *Ayala*, 576 U.S. at 275–76; *Jackson*, 562 U.S. at 598; *Landrigan*, 550 U.S. at 477; *Rice*, 546 U.S. at 337–42. Yet today we once again let stand an opinion making these same errors.[2] The panel majority here could not find a way to hold that the California Supreme Court's decision was an unreasonable application of Supreme Court precedent, so it transmuted the state court's legal decision into a factual one, and then purported to hold that the state court made an unreasonable determination of the facts.

Just over ten years ago, the Supreme Court explained it was crucially important for courts to "be vigilant and independent in reviewing petitions for the writ" of habeas

---

[1] *See also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558, 2560–61 (2018) (per curiam); *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) (per curiam); *Davis v. Ayala*, 576 U.S. 257, 275–76 (2015); *Lopez v. Smith*, 574 U.S. 1, 8–9 (2014) (per curiam); *Johnson v. Williams*, 568 U.S. 289, 297, 306 (2013); *Cavazos v. Smith*, 565 U.S. 1, 8 (2011) (per curiam); *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam); *Premo v. Moore*, 562 U.S. 115, 123 (2011); *Harrington v. Richter*, 562 U.S. 86, 92 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009); *Uttecht v. Brown*, 551 U.S. 1, 22 (2007); *Schriro v. Landrigan*, 550 U.S. 465, 477 (2007); *Rice v. Collins*, 546 U.S. 333, 337–42 (2006); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

[2] Twenty-three judges acknowledge the flaws in the panel majority's opinion. Fourteen judges have joined or agree with this dissent, while seven judges agree with Judge Miller that "Judge Ikuta and Judge Nguyen have persuasively argued" that "the panel erred in applying [§ 2254(d)] to the decision of the California Supreme Court affirming Martin Kipp's conviction." Miller Concurrence at 12.

corpus because "confidence in the writ and the law it vindicates [is] undermined[] if there is judicial disregard for the sound and established principles that inform its proper issuance." *Richter*, 562 U.S. at 91–92. "That judicial disregard," the Court warned, was "inherent in the opinion of the Court of Appeals for the Ninth Circuit" that was then under review. *Id.* at 92. Ten years later, the Supreme Court again held that the Ninth Circuit resolved a habeas case "in a manner fundamentally inconsistent with AEDPA." *Kayer*, 141 S. Ct. at 523. Our circuit's repeated failure to abide by Supreme Court direction raises "a question of exceptional importance." Fed. R. App. P. 35(a)(2).[3] In refusing to vacate and rehear this case en banc, we are implicitly endorsing an approach which circumvents the Supreme Court's case law requiring strict adherence to the limitations in § 2254(d). I therefore dissent from the denial of the petition to rehear this case en banc.

I

The factual background of this case is straightforward. A jury convicted Martin Kipp of strangling Antaya Howard to death in the course of an attempted rape. *Kipp v. Davis*, 971 F.3d 939, 943–47 (9th Cir. 2020). At trial, the court

---

[3] The concurrences attach great significance to the California Attorney General's decision not to petition for rehearing en banc, Paez Concurrence at 5, 10; Miller Concurrence at 12. But California also disclosed the underlying reason for its disinterest: the Ninth Circuit has "affirmed the denial of relief as to Kipp's death judgment arising from his Los Angeles County case." Davis En Banc Br. at 6. Although California may reasonably decide not to put further resources into fighting the reversal of one death sentence when a second death sentence is already in place, a state's practical considerations do not affect our responsibility to ensure that our cases follow the law and Supreme Court precedent.

admitted evidence that Kipp had raped and strangled to death Tiffany Frizzell just three months before Howard's murder. *Id.*[4]

In his direct appeal to the California Supreme Court, Kipp argued that the trial court's admission of evidence of Frizzell's rape and murder violated both state evidence rules and his federal due process rights.   Specifically, Kipp asserted that the Frizzell rape and murder were "not sufficiently similar to the charged offense to support the necessary inference that [he] committed both crimes and did so with the same intent" as required under section 1101 of the California Evidence Code.   The California Supreme Court issued a "careful, reasoned opinion," affirming Kipp's conviction and sentence.  *Kipp*, 971 F.3d at 962 (Nguyen, J., dissenting); *People v. Kipp*, 18 Cal. 4th 349.   The court rejected Kipp's claim that the admission of the Frizzell evidence violated state evidence rules.[5]  *People v. Kipp*, 18 Cal. 4th at 369–72.

---

[4] At the guilt phase, the trial court excluded the evidence of Kipp's rape of another woman, June M., in Long Beach in 1981 because it concluded that, once evidence of the Frizzell crimes was admitted, evidence of the June M. incident would be cumulative. *People v. Kipp*, 18 Cal. 4th 349, 361, 372 n.1 (1998).

A different jury later convicted Kipp for the murder and rape of Frizzell. *Kipp v. Davis*, 971 F.3d 866, 868 (9th Cir. 2020).

[5] Although the California Supreme Court did not explicitly address Kipp's federal due process claim when resolving his challenge to the admission of the Frizzell evidence, Kipp failed to overcome the "strong presumption that the state court adjudicated his federal claim" on the merits. *Kipp*, 971 F.3d at 950–51; *see Williams*, 568 U.S. at 293.  When evidence of other crimes is properly admitted under Rule 404(b) of the Federal Rules of Evidence in a federal criminal proceeding, the

The California Supreme Court explained the framework for determining the admissibility of evidence of uncharged crimes under section 1101 of the California Evidence Code. Section 1101 has been construed to mean that evidence "is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." *See People v. Kipp*, 18 Cal. 4th at 369 (citing *People v. Ewoldt*, 7 Cal. 4th 380, 402–03 (1994)). For such evidence to be admissible to prove identity, "the charged and uncharged offenses" must display a "pattern and characteristics . . . so unusual and distinctive as to be like a signature." *Id*. at 370 (quoting *Ewoldt*, 7 Cal. 4th at 403). In determining whether there is such a pattern, a court must consider the "degree of distinctiveness" of the shared marks, and the "number of minimally distinctive shared marks." *Id*. (emphasis and citation omitted).

Applying this framework, the California Supreme Court first acknowledged—but rejected—Kipp's argument that the Frizzell evidence "had little or no relevance on the issues of identity and intent because the two killings were more dissimilar than similar." *Id*. at 369. To the contrary, the state court listed the many similarities between the Frizzell rape and murder and the Howard murder: (1) "the perpetrator strangled a 19-year-old woman in one location, carried the victim's body to an enclosed area belonging to the victim (Howard to her car, Frizzell to her motel room), and covered

---

admission does not violate the defendant's due process rights. *See Dowling v. United States*, 493 U.S. 342, 353–54 (1990). Because section 1101 of the California Evidence Code is nearly identical to its federal counterpart, *compare* Cal. Evid. Code § 1101(b), *with* Fed. R. Evid. 404(b), the California Supreme Court's decision that the trial court properly admitted other crimes evidence is a decision that Kipp's due process rights were not violated. *See Kipp*, 971 F.3d at 950–51.

the body with bedding (Howard with a blanket, Frizzell with a bedspread)"; (2) "the bodies of both victims were found with a garment on the upper body, while the breasts and genital area were unclothed"; and (3) "in neither instance had the victim's clothing been torn, and that the bodies of both victims had been bruised on the legs." *Id.* at 370. Based on these shared characteristics, the court concluded that evidence of the Frizzell crimes was admissible to show that Kipp had an intent to rape and kill Howard and "was acting pursuant to a common plan or design to forcibly rape and to kill the young women he had chosen as his victims." *Id.* at 371.

In reversing the district court's denial of Kipp's habeas corpus petition, the panel majority, over Judge Nguyen's dissent, concluded that the California Supreme Court made an objectively unreasonable determination of the facts in deciding the admissibility of the Frizzell crime evidence. In the panel majority's view, the state court had "ignored evidence that supported Kipp's claim that the Frizzell and Howard crimes were too dissimilar to support an inference of connection by common identity or intent." *Kipp*, 971 F.3d at 955. The panel majority therefore felt free to review and reweigh the evidence before the California Supreme Court regarding the charged and uncharged offenses, and determined that the "shared characteristics" between the Frizzell and Howard crimes were "generic" and that there were "differences that far outnumber the similarities." *Id.* at 952. Based on its own view of the evidence, the panel majority held that the California Supreme Court's failure to conclude that the Frizzell crime was insufficiently similar to the Howard crime necessarily involved ignoring evidence and was therefore an unreasonable determination of the facts. *Id.* at 955.

The panel majority also concluded that the California Supreme Court "misstated the record" when it noted that Frizzell's breasts were unclothed. *Id.* at 954–55. According to the majority, a photograph of Frizzell's body showed that her breasts were covered. *Id.* at 952. The panel majority determined that such a misstatement of the record was another "unreasonable determination of the facts" for purposes of § 2254(d)(2). *Id.* at 954–55.

## II

*Kipp*'s conclusion that the California Supreme Court made an objectively unreasonable determination of the facts in deciding the admissibility of the Frizzell crime evidence is contrary to the text of § 2254(d) and to Supreme Court precedent.

## A

Under § 2254(d)(2), we may not grant a habeas petition unless the claim adjudicated on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The Supreme Court has explained that a state court's factual determination is "unreasonable" only when it is "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Collins*, 546 U.S. at 341–42).

Further, the text of § 2254(d)(2) requires that the state court's decision must be "based on" that unreasonable determination of the facts. The state court's unreasonable factual determination must have been "defective in some material way." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogation on other grounds recognized by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). A misapprehension of the record, for instance, must "go[] to a *material* factual issue that is *central* to petitioner's claim." *Id.* at 1001 (emphases added). Only then can the "misapprehension . . . fatally undermine the fact-finding process" such that the requirement under § 2254(d)(2) is satisfied. *Id.*; *cf. Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000) (highlighting that the state appellate court's decision to affirm the denial of a new trial was "based on" the unreasonable determination that the juror did not deliberately lie).

The majority held that the California Supreme Court's decision here was based on two unreasonable determinations of the facts under § 2254(d)(2). *Kipp*, 971 F.3d at 954–55. Both these rulings are meritless.

1

First, the panel majority's determination that the California Supreme Court ignored evidence or that its "fact-finding process itself was defective," *id.* at 955, is contrary to the record and belied by the court's opinion. Rather than ignore dissimilarities, as the panel majority claimed, the California Supreme Court expressly acknowledged Kipp's argument that the Frizzell evidence "had little or no relevance on the issues of identity and intent because the two killings were *more dissimilar than similar*." *People v. Kipp*, 18 Cal. 4th at 369 (emphasis added).

The panel majority put great weight on the California Supreme Court's decision not to enumerate the dissimilarities between the Howard and Frizzell crimes. *Kipp*, 971 F.3d at 955. But a state court's decision not to delve into an argument in detail does not mean that the court has "simply overlooked" it.[6] *Williams*, 568 U.S. at 298–301 (explaining that "busy state courts" do not have an obligation "to discuss separately every single claim to which a defendant makes even a passing reference"). As Judge Nguyen points out, the characterization that the state court "ignored evidence" by not expressly enumerating the differences between the two crimes is "a grossly unfair reading of the state court decision." *Kipp*, 971 F.3d at 963 (Nguyen, J., dissenting). The California Supreme Court's determination of the facts is not objectively unreasonable under § 2254(d)(2).

The panel majority claimed that the California Supreme Court's failure to discuss the dissimilarities "stands in contrast" to other California Supreme Court cases on the same issue, and it cited two cases to support this argument, *People v. Rogers*, 57 Cal. 4th 296 (2013), and *People v. Foster*, 50 Cal. 4th 1301 (2010). *Kipp*, 971 F.3d at 955. Neither case supports *Kipp*'s contention. In both these cases, the California Supreme Court cited and followed the

---

[6] This is especially true where, as here, the dissimilarities between the Howard and Frizzell crimes were not a key consideration in applying section 1101 of the California Evidence Code. Because California law directs courts to focus on the similarities in determining the admission of uncharged crimes evidence, *see Ewoldt*, 7 Cal. 4th at 393, 402, the California Supreme Court reasonably focused on assessing the similarities to reach its conclusion. Although Judge Paez's concurrence faults the California Supreme Court for not spending more time discussing the dissimilarities between the two killings, Paez Concurrence at 9, it had no reason to do so as a matter of California law.

framework set out in *People v. Kipp* and *Ewoldt* as the correct governing law regarding admission of uncharged crimes evidence. *Rogers*, 57 Cal. 4th at 326; *Foster*, 50 Cal. 4th at 1328. Dispelling the defendant's argument is not part of that framework. *See Ewoldt*, 7 Cal. 4th at 393–403. And only after upholding the admission of the evidence did *Rogers* and *Foster* go on to discuss the dissimilarities between the prior crimes and the charged crime. *Rogers*, 57 Cal. 4th at 327 (concluding that the trial court did not err in admitting the other crime evidence immediately after listing the numerous common features between the murders); *Foster*, 50 Cal. 4th at 1329 (beginning its analysis by noting the similarity between the prior crimes and the charged offenses, and concluding that the shared features supported the inference of a common plan).

2

The panel majority's second example of the California Supreme Court's unreasonable determination of the facts is even flimsier. In the course of detailing the numerous similarities between the Frizzell and Howard crimes, the California Supreme Court stated that "the bodies of both victims were found with a garment on the upper body, while the breasts and genital area were unclothed." *People v. Kipp*, 18 Cal. 4th at 370. This statement, the majority concluded, means that the court's decision was "based on an unreasonable determination of the facts" under § 2254(d)(2), given a photograph in the record showing Frizzell's breasts were covered when she was found. *Kipp*, 971 F.3d at 946, 952–55.

The California Supreme Court's statement on this point is literally true: Frizzell's bra was removed and Howard's bra was twisted above her breasts. Regardless, in the context of the court's consideration of whether the Frizzell and

Howard crimes were sufficiently similar, this single point is immaterial. Under § 2254(d)(2), the challenged state court's decision must be "based on" the "unreasonable determination of the facts." § 2254(d)(2). Accordingly, as set forth in *Taylor*, only when the unreasonable determination of the facts goes to "a *material* factual issue that is *central* to petitioner's claim," can it "fatally undermine the fact-finding process." 366 F.3d at 1001 (emphasis added). Judge Nguyen correctly concluded that this "single detail" about Frizzell's breasts being unclothed "does not defeat the state court's overarching conclusion about the parallels between the crimes." *Kipp*, 971 F.3d at 963 n.2 (Nguyen, J., dissenting).

The precedents cited by the panel majority offer no support for its conclusion that an immaterial factual error by the state court could relieve it of AEDPA deference. In both *Maxwell v. Roe* and *Brumfield v. Cain*, the unreasonable factual determination at issue was the lynchpin of the challenged decision. *Maxwell*, 628 F.3d 486, 499–501, 505 (9th Cir. 2010); *Brumfield*, 576 U.S. 305, 322 (2015). In *Maxwell*, a state habeas court unreasonably determined that a jailhouse informant had testified credibly at the defendant's trial, and this unreasonable determination was critical because a defendant is entitled to relief where "false evidence brought about [his] conviction." 628 F.3d at 499–501, 505. Similarly, in *Brumfield*, the state court's unreasonable factual determination that the defendant was not subaverage in intelligence and did not have an impairment in adaptive skills was critical because it deprived the defendant of a hearing to which he was entitled under the Eighth Amendment. 576 U.S. at 321–22.[7] By contrast, the

---

[7] Judge Paez's additional citations to *Burton v. Davis*, 816 F.3d 1132, 1155–59 (9th Cir. 2016), and *Green v. LaMarque*, 532 F.3d 1028,

California Supreme Court's determination that Frizzell's breasts were unclothed was only one among numerous "shared characteristics" that the court considered before concluding that the Frizzell and Howard crimes were "sufficiently similar to support a rational inference of identity, common design or plan, or intent." *People v. Kipp*, 18 Cal. 4th at 369–70 (citing *Ewoldt*, 7 Cal. 4th at 402–403). The California Supreme Court's characterization of the record on a single point, even if assumed inaccurate, did not "fatally undermine the fact-finding process," *Taylor*, 366 F.3d at 1001. The court carefully detailed the other shared characteristics presented in the record. *People v. Kipp*, 18 Cal. 4th at 371–72. Contrary to the panel majority's conclusion, such a misstatement by the state court does not satisfy the requirement under § 2254(d)(2).

---

1033 (9th Cir. 2008), Paez Concurrence at 8 n.4, provide no support. Applying a pre-AEDPA standard, *Burton* held that where a state court entirely declined to consider the facts material to a defendant's *Faretta* claim, there was "no relevant state court finding to which deference was due under 28 U.S.C. § 2254(d)." 816 F.3d at 1158–59 (quoting *Chacon v. Wood*, 36 F.3d 1459, 1465 (9th Cir. 1994), *superseded by statute on other grounds as stated in Morris v. Woodford*, 229 F.3d 775, 779 (9th Cir. 2000)). By contrast, the California Supreme Court considered Kipp's evidentiary claim and the evidence supporting it. *People v. Kipp*, 18 Cal. 4th at 369–72. Similarly, *Green* held that where the state court "never fulfilled its affirmative duty" under *Batson* to determine whether the prosecutor's motive for striking a juror was purposeful racial discrimination, the court's decision that the strike was not racially motivated "was based on an unreasonable determination of the facts." 532 F.3d at 1030–31 (quoting *Lewis v. Lewis*, 321 F.3d 824, 832 (9th Cir. 2003)). Here, the California Supreme Court properly addressed the relevant question under state law; the panel majority just disagreed with its conclusion.

B

While the panel majority purported to hold that the state court made an unreasonable finding of fact under § 2254(d)(2), it actually disapproved the state court's legal conclusion on de novo review.

Under AEDPA, when we review "a state court conclusion on a mixed issue involving questions both of fact and law," we "must first separate the legal conclusions from the factual determinations that underlie it." *Lambert v. Blodgett*, 393 F.3d 943, 977–78 (9th Cir. 2004). We must give the fact-finding "the full deference of §§ 2254(d)(2) and (e)(1)," while reviewing "the state court's conclusion as to the ultimate legal issue . . . per § 2254(d)(1)." *Id.* at 978.

The panel majority failed to separate its factual determination (whether the California Supreme Court was objectively unreasonable in finding similarities between the Howard and Frizzell crimes) from the "ultimate legal issue" (whether the California Supreme Court erred in holding that evidence of the Frizzell offense was admissible under section 1101 of the California Evidence Code). Instead, having reweighed the evidence to determine that the similarities between the Frizzell and Howard crimes were "generic," and that the differences "far outnumber the similarities," the panel majority concluded that the state court made a legal error in ruling that the Frizzell evidence met the standard necessary for admission under section 1101 of the California Evidence Code. *Kipp*, 971 F.3d at 952.

This is simply de novo review of the state court's application of the law to the facts masquerading as AEDPA deference to the state court's determination of the facts. *See Kayer*, 141 S. Ct. at 524–25 (chastising this Court for reweighing de novo Kayer's "relatively weak" aggravator

and considerably weighty mitigating evidence). The panel majority simply stepped into the shoes of the California Supreme Court and determined that the Frizzell evidence was not admissible under section 1101, because the panel majority found that the dissimilarities between the prior offense and the offense at trial outweighed the similarities. But it is not our place to grade the California Supreme Court's application of law to facts on habeas review; "[w]e are not a state supreme court of errors; we do not review questions of state evidence law." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Under AEDPA, we must defer to the state court's conclusions of law and fact unless they are objectively unreasonable. By wrongly framing its ruling as a review of the state court's factual determination under § 2254(d)(2), the panel majority made an end run around the limitations of § 2254(d)(1). It is clear why such an end run was necessary: as the panel majority recognized, there is "no clearly established law that addresses whether the admission of a defendant's criminal history or prior bad acts would violate due process." *Kipp*, 971 F.3d at 951 n.8.

### III

The panel majority in *Kipp* "'substituted its own judgment for that of the state court' instead of applying deferential review." *Kayer*, 141 S. Ct. at 524 (quoting *Visciotti*, 537 U.S. at 25). "In other words, [the panel majority] appears 'to have treated the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review.'" *Id.* at 523 (quoting *Richter*, 562 U.S. at 102). As the Supreme Court stated in an analogous context, "[h]ere it is not apparent how the Court of Appeals' analysis would have been any different without AEDPA." *Richter*, 562 U.S. at 101. We have already been chastised by the Supreme Court for disguising our

disagreement with a state court's legal conclusion as a ruling on the state court's factual determinations. *Smith*, 574 U.S. at 8 ("Although the [majority] claimed its disagreement with the state court was factual in nature, in reality its grant of relief was based on a legal conclusion . . . governed by § 2254(d)(1), not one of fact governed by § 2254(d)(2)."). The panel majority's approach of disguising a disagreement with a state court's legal conclusion as a determination that the state court engaged in unreasonable fact-finding provides the roadmap for a wholesale evasion of the strictures of AEDPA. Having sworn to uphold the law, we must recognize this latest circumvention of the binding authority of the Supreme Court as a question of exceptional importance. I therefore respectfully dissent from the denial of rehearing en banc.

---

VANDYKE, Circuit Judge, with whom IKUTA, CALLAHAN, R. NELSON, and BUMATAY, Circuit Judges, join, dissenting from denial of rehearing en banc:

I write to note my respectful disagreement with Judge Miller's concurrence in denial of rehearing en banc. Judge Ikuta and the thirteen judges who joined her dissent—one shy of a majority of active judges on our court—obviously disagree with Judge Miller's view that this case does not meet the criteria for en banc review. No doubt their individual reasons for reaching that conclusion vary. But presumably one reason is precisely what Judge Ikuta points out in the first paragraph of her dissent: that our court has over and over repeated the same error of purporting to defer while not really being deferential when reviewing state court criminal convictions under AEDPA.

Long before Judge Ikuta said so in this case, a wide range of judges on our court have made precisely the same

observation—again and again.  *See, e.g.*, *Ford v. Peery*, 976 F.3d 1032, 1051 n.4 (9th Cir. 2020) (R. Nelson, J., dissenting) ("Our court has struggled to correctly apply AEDPA's highly deferential standard.  Despite the Supreme Court's repeated admonitions, the majority repeats our court's sadly regular error." (citations omitted)); *Andrews v. Davis*, 944 F.3d 1092, 1130–31 (9th Cir. 2019) (en banc) (N.R. Smith, J., joined by Rawlinson and Owens, JJ., concurring in part and dissenting in part) ("When will my colleagues quit ignoring the Supreme Court's repeated reminders to us that '[t]he role of a federal habeas court is to "guard against extreme malfunctions in the state criminal justice systems?"'" (citation omitted)); *Hall v. Haws*, 861 F.3d 977, 994 (9th Cir. 2017) (Callahan, J., dissenting) ("In finding a due process violation warranting habeas relief, the majority brushes aside the AEDPA standards and the Supreme Court's repeated instructions that we must defer to reasonable state court decisions."); *Tarango v. McDaniel*, 837 F.3d 936, 953 (9th Cir. 2016) (Rawlinson, J., dissenting) ("In the last ten years, the United States Supreme Court has repeatedly rebuked this Circuit for attempting to make end-runs around the formidable obstacles to review contained in the AEDPA. . . .  Despite our recurring acknowledgment of this demanding standard, the Supreme Court has constantly chastised us for failing to take our professed acknowledgment to heart."); *Doody v. Ryan*, 649 F.3d 986, 1029 (9th Cir. 2011) (en banc) (Tallman, J., joined by Rymer and Kleinfeld, JJ., dissenting) ("The Supreme Court has repeatedly told us to adhere to the highly deferential standard of review of state court judgments that [AEDPA] requires . . . .  The majority will not yield to the shot across our bow fired by the Supreme Court . . . [and] steams defiantly ahead, far from the rest of the fleet."); *see also Anderson v. Neven*, 974 F.3d 1119, 1137 (9th Cir. 2020) (VanDyke, J., dissenting from denial of rehearing en banc) ("This court

menaces federalism when it cavalierly vacates state court convictions that aren't even close calls under AEDPA. This case is a particularly glaring example of that. The Supreme Court has provided us 'many rebukes' for such behavior. Because this deeply flawed decision presented an easy opportunity to fix our most egregious habeas overreaching, and we failed to do so, I respectfully dissent." (internal citation omitted)).

To err is human, as are judges, so the occasional flub applying AEDPA is to be expected and thus deemed unworthy of en banc review for the reasons given by Judge Miller. But at some point—and we are well past that point—our court needs to own its systemic failure applying AEDPA. We need to recognize our regular and improper interference with state criminal justice systems is, *cumulatively*, "a question of exceptional importance," and do something about it. Taking this case en banc would have been a good place to start.

---

O'SCANNLAIN,[*] Circuit Judge, respecting the denial of rehearing en banc:

I agree with the views expressed by Judge Ikuta in her dissent from the denial of rehearing en banc.

---

[*] As a judge of this court in senior status, I no longer have the power to vote on calls for rehearing cases en banc or formally to join a dissent from failure to rehear en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 35(a). Following our court's general orders, however, I may participate in discussions of en banc proceedings. *See* Ninth Circuit General Order 5.5(a).